IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIA GUADALUPE CONTRERAS, individually and as Guardian ad Litem for YVONNE CONTRERAS and ALEXANDER CONTRERAS, minors, and as Successors in Interest of ARTEMIO CONTRERAS,<br><br>　　　　　　Plaintiffs,<br><br>vs.<br><br>BRIDGESTONE/FIRESTONE, INC.; SEARS ROEBUCK and CO.; et al.,<br><br>　　　　　　Defendants. | 1:04-cv-05423-REC-SMS<br><br>**ORDER RE: PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS**<br>(Doc. 55) |

This matter came on regularly for hearing on January 27, 2006 at 9:30 a.m. in Courtroom No. 7 on the Sixth Floor before the Honorable Sandra M. Snyder, United States Magistrate Judge. W. Randolph Barnhart, Esq., of Barnhart, Ekker & McNally, LLP, appeared Pro Hac Vice on behalf of plaintiffs. Robert G. Williams, Esq., of Perez, Williams & Medina appeared on behalf of plaintiffs. Melissa A. Immel, Esq., of Iverson, Yoakum, Papiano & Hatch appeared on behalf of defendant, Bridgestone/Firestone, Inc. Scott G. Edwards, Esq., of Harline, Dacus, Barger, Dreyer & Kern, LLP,

1

1  appeared Pro Hac Vice and telephonically and on behalf of
2  defendant, Bridgestone/Firestone, Inc.  Robert J. Gibson, Esq., of
3  Snell & Wilmer, LLP, appeared telephonically on behalf of
4  defendant, Ford Motor Company.
5      The Court was on the record with counsel for two and one-half
6  hours (2½), and, as such, this order will not reitereate all
7  pleadings and exhibits referred to nor summarize argument.
8  Inasmuch as this Court made it quite clear, on the record, its
9  position regarding the best mode and method of addressing the
10 disputed document production resolution, any further clarification
11 and/or explanation can be reviewed by obtaining a copy of the
12 transcript of the hearing.
13     The focus of this hearing regarded plaintiff's request for
14 permission of Firestone and Ford to use the documents produced in
15 the Multi-District Litigation (MDL).  Defendant Ford, according to
16 the Joint Statement Re: Discovery Disagreements (doc. 58) filed in
17 conjunction with this motion, agreed to such use; Bridgestone/
18 Firestone has refused.  At the risk of oversimplifying defendant's
19 argument, (1) there is a Confidentiality Order prohibiting the
20 production and use of documents already produced by Bridgestone/
21 Firestone, Inc., in the MDL litigation in other civil actions; and,
22 (2) by allowing plaintiff in this action to access the ninety-one
23 (91) CDs that contain the MDL discovery, all of which plaintiff's
24 counsel not only already has but has seen, this Court would, in
25 effect, be allowing plaintiff to expand on her scope of discovery
26 after the discovery cut-off date has come and gone.
27     This Court reviewed Magistrate Judge V. Sue Shields' Entry On
28 Motion To Amend Confidentiality Order, filed on November 9, 2005,

in the United States District Court, Southern District of Indiana, Indianapolis Division, which order is based on this plaintiff's motion in that court, Motion To Amend Confidentiality Order Dated March 2001, or, in the Alternative, to Permit Intervenor [plaintiff in this action] and Her Attorney to Use Documents Produced by Bridgestone/Firestone, Inc., in the Multidistrict Litigation Pursuant to Said Order in Another Civil Action.  In pertinent part, Judge Shields left the determination of the use of documents already produced in the MDL up to this court:

> Nothing in the Confidentiality Order in this MDL prohibits Firestone from producing the documents that Ms. Contreas [sic] seeks; rather, Firestone apparently has refused to produce the documents on relevance grounds. That dispute is not for this court to resolve. If the parties are unable to resolve it among themselves, the appropriate course of action is for Ms. Contreras to file a motion to compel in the <u>Contreras</u> action; any documents that the court in that case finds to be relevant and discoverable may be produced to Ms. Contreras by Firestone without the need for any action on the part of this court.

   Pivotal in assisting this Court in reaching her decision is Firestone's Reply to Plaintiff's Objection To Rule 13 MDL Motion To Transfer and Motion To Remand, attached to the Rule 251 Stipulation as plaintiff's exhibit 8.  The entire document appears to make this plaintiff's argument for her in this motion; but, specifically:

   - "As Firestone has previously demonstrated to the Court, cases already coordinated under Rule 11 and Rule 13 involve many different types of tire failure, and many cases also involve undescribed types of tire failure.  The common thread is a tire failure leading to loss of control of the vehicle and injury."
//

3

       - "The <u>Brunner</u> case is but one of many examples in which plaintiffs in this coordinated litigation attempt to utilize core discovery or recall evidence even when their case might not actually involve a tire that was a part of the August 2000 recall or a Ford Explorer.  Issues involving the 'root cause' of the failures found in the recalled tires, the NHTSA report concerning the recalled tires, the alleged defects in the recalled tires, the use of accidents involving recalled tires as alleged 'other incident' evidence, and other issues surrounding the recalled tires all take center stage in the preparation of coordinated cases for trial (because of plaintiffs' attempts to utilize this type of evidence) — whether or not the tires involved were subject to the August 2000 recall."

       - "Indeed, the Duran Case Should Be Coordinated Because It Has Common Questions of Fact with the Other Cases Previously Coordinated.  The Duran case has, and is also likely to have, many common questions of fact with the other cases previously coordinated pursuant to Rules 11 and 13 in Texas.  For example, all of these allegations are common to those found in the vast majority of the coordinated cases:

      1.   Plaintiffs typically allege products liability claims against Firestone.

      2.   Plaintiffs typically allege negligence claims against Firestone.

      3.   The cases typically involve allegations relating to tires and stability of vehicles.

      4.   The cases typically involve allegations of tire failure of some kind.

5. The cases typically involve allegations of tread/belt separations in Firestone tires.

6. The cases typically involve allegations of loss of control of the vehicle, resulting in rollover accidents in the vast majority of cases.

7. Plaintiffs typically allege that the tires were not properly designed.

8. Plaintiffs typically allege that the tires were not properly manufactured.

9. Plaintiffs typically allege that the tires were not properly marketed.

10. Plaintiffs typically allege that Firestone failed to adequately warn about the tire.

11. Plaintiffs typically claim that Firestone tires are designed with inadequate component gauges, including but not limited to innerliner gauge, interbelt gauge, belt wedge gauge, and W7 gauge.

12. Plaintiffs typically claim that Firestone tires are manufactured with inadequate component gauges, including but not limited to innerliner gauge, interbelt gauge, belt wedge gauge, and W7 gauge.

13. Plaintiffs typically claim or attempt to show that Firestone tires were manufactured with defective rubber compounds, particularly in the belt package.

14. Plaintiffs typically want to depose the same defendants' witnesses from Firestone.

15. Plaintiffs typically seek and list as trial exhibits the same defendants' documents from Firestone.

1         16.  Plaintiffs always want to introduce evidence
2  regarding the August 2000 tire recall, other voluntary product
3  replacement programs, and the Engineering Analysis Report and
4  Initial Decision issued by the National Highway Traffic Safety
5  Administration.
6         17.  Plaintiffs always seek to demonstrate that the tire
7  recall issues apply to their particular tire regardless of whether
8  the tire was recalled.
9         18.  The experts typically designated by Plaintiffs and
10 Defendants overlap among the cases.
11        19.  Plaintiffs argue all Firestone tires should have
12 been recalled."
13        In fact, many of the allegations highlighted by defendant
14 above are the same or similar to those in the instant case.  So,
15 whether the issue is recall, or what is "common green", or which
16 tires have the same "skim stock", or whether tire size, plant of
17 manufacture, or date of manufacture play a role in liability is
18 certainly not for this Court to decide at this stage of the
19 litigation.  In fact, as Firestone so eloquently sets forth in its
20 Reply To Plaintiff's Objection, above, this case is likely to have
21 many of the same or similar issues as cases that have gone before
22 this one.  Mr. Barnhart, arguing for plaintiff in this action,
23 assured the Court that if allowed to review and make use of the 91
24 MDL CDs already in his possession, many if not most of plaintiff's
25 document requests will be resolved.  "Nearly all of Plaintiff's
26 requests have been produced by Firestone in the MDL case."  See 251
27 Stipulation, page -31-, lines 5-6.
28 //

Defendant's arguments that plaintiff is asking for too much too late, that using the universe of the MDL documents puts defendant at a distinct disadvantage because they will have no way of knowing what to defend against, that this is "trial by ambush," is a bit histrionic.  As veterans of this particular topic and area of litigation, it is highly unlikely that there will be any surprises for counsel.  And, we are, after all, still talking about discovery: "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."  FRCP 26(b)(1).  While it is unfortunate that this issue of the use of MDL document production did not come up earlier in the discovery phase, that plaintiff crafted various and assorted other interrogatories and requests for production that defendants, indeed, appear to have attempted to respond to with appropriate evaluation, thought and candor, nonetheless the MDL discovery will be helpful to all parties as well as the court, and perhaps eventually the trier of fact, in resolving this litigation.

Therefore, IT IS THE ORDER OF THIS COURT, that plaintiff's motion is GRANTED IN PART and DENIED IN PART as follows:

A.   The request to address each separate item specifically, listed as a. through m., set forth in the Stipulation, pages 3-4, is DENIED;

B.   Plaintiff may review and use, as relevant, all documents produced in the Multi-District Litigation;

C.   Should plaintiff determine that the MDL documents are not responsive to some of their discovery requests herein, she is to revise her motion to compel production after a renewed meet and

7

1 confer with defendants;

2     D.   Should this Order result in a perceived need to reopen
3 discovery and/or evoke a similar request from defendants to
4 reevaluate their use of MDL documents, all counsel are to meet and
5 confer after which either a joint telephonic or in-person discovery
6 dispute conference shall be held with this Court to work through
7 the concerns/disputes;

8     E.   Any requests to re-depose any witnesses due to this
9 Order, which request(s) meet with objection(s), shall be reviewed
10 by the Court either by way of a joint telephonic conference or an
11 in-chambers discovery dispute conference BUT ONLY after a meet and
12 confer by all counsel;

13     F.   Plaintiff's request that defendants bear all costs
14 associated with any depositions needing to be re-noticed is DENIED;
15 and,

16     G.   Award of attorney fees and costs regarding the filing and
17 hearing of this motion is DENIED.

18 IT IS SO ORDERED.

19 **Dated:  March 17, 2006**           **/s/ Sandra M. Snyder**
icido3                                  UNITED STATES MAGISTRATE JUDGE

8