1

2

3

4

5

6                    UNITED STATES DISTRICT COURT

7                    EASTERN DISTRICT OF CALIFORNIA

8

9   MARIA GUADALUPE CONTRERAS,      )        1:04-cv-5423 OWW SMS
    individually and as Guardian ad )
10  Litem for YVONNE CONTRERAS and  )        PRETRIAL ORDER
    ALEXANDER CONTRERAS, minors, and)
11  as Successors in Interest of    )        Motion in Limine Date: In
    ARTEMIO CONTRERAS,              )        Progress
12                                  )
                    Plaintiffs,     )        Trial Date: 3/18/08 8:30
13                                  )        Ctrm. 3 (JT-20 days)
         v.                         )
14                                  )
    BRIDGESTONE/FIRESTONE NORTH     )
15  AMERICAN TIRE, LLC, and FORD    )
    MOTOR COMPANY,                  )
16                                  )
                    Defendants.     )
17  _____)

18

19                 I.   JURISDICTION AND VENUE

20        1.   Jurisdiction is based upon diversity of citizenship

21  under 28 U.S.C. § 1332.  Venue is proper under 28 U.S.C. § 1391.

22                      II.   JURY/NON-JURY

23        1.   The parties each have demanded a trial by jury in

24  accordance with Fed. R. Civ. P. 38.

25                          III.   FACTS

26  A.   Undisputed Facts

27        1.   The vehicle which is the subject of this lawsuit is a

28  1995 Ford Explorer with VIN number 1FMDU32X5SZB02681 (the subject

                               1

Explorer) manufactured by Defendant Ford Motor Company.

2. The tire which is the subject of this lawsuit is a Road King Sport SR 225/70R15 tire bearing DOT number W2UUR21316 (the subject tire) designed and manufactured by Defendant Bridgestone/ Firestone, Inc.

3. The lawsuit arises out of a single vehicle incident that happened on June 30, 2003, on northbound Highway 99 in Tulare, California.

4. At the time of the incident, the subject Explorer was being driven by the decedent, Artemio Contreras. Also in the Explorer with Mr. Contreras were his wife, Maria Contreras, and their children, Alexander Contreras and Yvonne Contreras (collectively "Plaintiffs").

5. Artemio Contreras suffered fatal injuries and died as a result of the incident.

6. The other passengers sustained injuries in the incident and claim various damages, the nature and extent of which is disputed.

7. At the time of the incident, the subject Explorer was equipped with the subject Road King tire.

8. The subject Road King tire was not an original equipment tire installed on the Explorer when it was originally produced and sold by Ford; rather, it was installed on the Explorer some time later.

9. The subject Road King tire on the Explorer's left rear wheel suffered a tread separation.

B.   Disputed Facts

1.   Whether the Explorer was defectively designed with

1  respect to its handling following a tread separation.

2      2.    Whether the incident and resulting damages were
3  proximately caused by the alleged defective design of the
4  Explorer.

5      3.    Whether Ford Motor Company was negligent in designing,
6  testing and marketing the Explorer with respect to its handling
7  following a tread separation, and if so, whether the negligence
8  was a proximate cause of the incident and Plaintiffs' damages.

9      4.    Whether Ford had a duty to warn Plaintiffs of alleged
10 defects in the Explorer with respect to its handling following a
11 tread separation.

12     5.    Whether Ford failed to warn Plaintiffs of alleged
13 defects in the Explorer with respect to its handling following a
14 tread separation.

15     6.    Whether Ford's alleged failure to warn Plaintiffs of
16 alleged defects in the Explorer with respect to its handling
17 following a tread separation was a proximate cause of the
18 incident and Plaintiffs' damages.

19     7.    Whether the Road King tire was defectively designed by
20 Firestone.

21     8.    Whether the Road King tire was defectively manufactured
22 by Firestone (Firestone does not believe this fact should be
23 disputed based on the testimony of Plaintiff's expert, Dennis
24 Carlson).

25     9.    Whether the incident and resulting damages were
26 proximately caused by the alleged defective design or manufacture
27 of the Road King tire.

28     10.   Whether Firestone was negligent in designing, testing

1   and monitoring the performance of the Road King tire.

2       11.   Whether Firestone had a duty to warn Plaintiffs of

3   alleged defects in the Road King tire.

4       12.   Whether Firestone's alleged failure to warn Plaintiffs

5   of alleged defects in the Road King tire was a proximate cause of

6   the incident and Plaintiffs' damages.

7       13.   Whether Firestone had a post-sale duty to warn, recall

8   or retrofit the Road King tire, and if so, whether it breached

9   that duty.

10      14.   Whether Firestone's alleged breach of its post-sale

11  duty to warn, recall or retrofit the Road King tire was a

12  proximate cause of the incident and Plaintiffs' damages.

13      15.   Whether Plaintiffs are entitled to punitive or

14  exemplary damages against Firestone.

15      16.   Whether the Driver of the vehicle, Artemio Contreras,

16  was faced with a sudden emergency in his operation of the

17  Explorer.

18      17.   Whether the driver of the vehicle, Artemio Contreras,

19  was negligent in his operation of the Explorer.

20      18.   Whether Artemio Contreras' alleged negligence in

21  operating the Explorer was a proximate cause of the incident

22  and/or Plaintiffs' injuries and damages.

23      19.   Whether Artemio Contreras was wearing his available

24  seat belt at the time of the incident.

25      20.   Whether Artemio Contreras' failure to wear his

26  available seat belt caused or contributed to his death and

27  Plaintiffs' damages.

28      21.   The extent of Artemio Contreras' comparative fault, if

                                4

any, for the accident, his own death, and/or Plaintiffs' injuries and damages.

22.   The amount of fault attributable to all tortfeasors for Plaintiffs' non-economic damages, if any, in accordance with California Civil Code §§ 1431.1 through 1431.5.

23.   The amount of compensatory damages, if any, to be awarded to Plaintiffs.

24.   The amount of punitive damages, if any, to be awarded to Plaintiffs by Firestone.

25.   Whether Firestone was negligent in allegedly failing to warn about the dangers of aged tires.

### IV.   DISPUTED EVIDENTIARY ISSUES

1.   The parties have set forth the disputed evidentiary issues in their briefing on the various motions in limine and in the hearings on such motions that were argued starting on February 5, 2008.  Additionally, the parties previously submitted "Special Briefing" on various evidentiary issues.  The Court has, in progress, hearings on disputed evidentiary issues which will result in rulings that address all pretrial motions.

### V.   SPECIAL FACTUAL INFORMATION

A.   Plaintiffs.

1.   The particular acts, omissions or conditions constituting the basis of liability are as follows:

2.   On June 30, 2003, Artemio Contreras, husband of the Plaintiff and father of their two children, Yvonne and Alexander, was driving his 1995 Ford Explorer down a highway in Tulare County, California, when the left rear Firestone Road King Sport tire (hereafter "Firehawk/Road King") catastrophically

**5**

malfunctioned, causing Mr. Contreras to lose control of the Explorer.  The Explorer rolled over after the tire malfunctioned, resulting in the death of Mr. Contreras.  Mrs. Contreras and the children were in the car during the accident that killed their husband and father.  Mrs. Contreras has testified that her husband and the rest of the family were wearing their seat belts. Plaintiffs claim that the event was not controllable.  Mr. Contreras was like many others whose Explorer went out of control following a Firestone tire tread separation, which was the very reason the original equipment Firestone tires were recalled.

3.    As to Ford, Plaintiffs claim that the Ford Explorer's low understeer gradient design characteristics and skate propensity lead it to going out of control following a tread separation.

4.    As to Firestone, Plaintiffs claim that the subject Firehawk/Road King tire suffers from the same design and manufacturing defects as the similarly designed and recalled original equipment ATX, ATXII and wilderness AT tires.  First, the Firehawk/Road King and the recalled original equipment tires are similar in their composition, manufacturing process, tire defects, tire failure mode, and accident circumstances.  Second, the Firehawk/Road King tire involved herein and the original equipment recalled tires underwent C-95 cost cutting changes which resulted in a rash of tread separations and wrecks.  Third, many of the defects identified in the original equipment recalled tires which led to tread separations were also present in the subject Firehawk/Road King tire, such as inadequate wedges and bad skim stock.  Fourth, this case, like the cases involving the

6

original equipment recalled tires, involves the exact same defect, the same vehicle, a loss of control, and a rollover in a warm weather part of the country.  Fifth, Firestone's own internal documents establish that they compared the Firehawk/Road King to the recalled original equipment tires, and others, for comparisons and to track tread separation rates.  Those documents, which existed several years before the subject accident, reveal that the Firehawk/Road King had a greater tread separation rate than the original equipment recalled tires, but Firestone did not warn, recall or retrofit the Firehawk/Road King tire.

### B.   Ford Motor Company

5.   The particular acts, omissions or conditions constituting the basis of Ford's defense are as follows:

6.   The Explorer was traveling north on State Route 99 near exit 89, Carmill Avenue, in Tulare, California.  The Explorer was traveling in the #2 lane (of 2 lanes) when the tire tread belt detached from the left rear tire.  According to evidence documented by the California Highway Patrol, the left rear tire began to deposit tire marks on the roadway demonstrating that the Explorer continued to travel straight in the #2 lane despite the tire tread separation.  Despite these facts, Mr. Contreras made an unreasonable and excessive steer to the right that sent the Explorer into a clockwise slide, causing the Explorer to slide off of the paved roadway and into a dirt shoulder where it overturned.

7.   Ford contends that the 1995 Ford Explorer is controllable following a tread separation event.  In fact, the

U.S. Department of Transportation, based on objective test data, confirmed that the likelihood of a crash following a tread separation is the same whether the vehicle is an Explorer or other compact SUV. In that same study, the Department of Transportation found that the vast majority of tread separations, including many that occur at highway speeds, do not result in crashes - further proof that Explorers and other SUVs are controllable following tread separation events.

8.     Moreover, Artemio Contreras was not wearing his available seatbelt at the time of the accident. As a result, he was completely ejected from the Explorer during the rollover accident. As a result of his ejection, he suffered severe injuries, including a basilar skull fracture, and died at the scene. The other three occupants of the Explorer were properly restrained (in either a seat belt or child seat) and sustained only minor injuries. Had Mr. Contreras been wearing his seat belt, he would most likely be alive today and would have only suffered minor injuries.

C.     Firestone

9.     The particular acts, omissions or conditions constituting the basis of Firestone's defenses are as follows: Firestone hereby incorporates the Special Factual Information asserted by Ford in section V(B) above. In addition, Firestone adds the following particular acts, omissions or conditions constituting the basis for Firestone's defenses:

10.     A tread belt detachment is a condition which can result from diverse causes, and is commonly the result of usage and service conditions in tires that have no defects of design or

**8**

1  manufacture.   Tire experts commonly agree that tread belt

2  detachments can be caused by under-inflated operation, over-

3  loaded operation, road hazard impact injuries, improperly

4  repaired punctures, and other causes.

5  　　　　11.   The cause of the tire failure in this matter was "a

6  very traumatic road hazard injury that actually split the inner

7  liner and allowed for intracarcass pressurization in that area."

8  The physical evidence on the tire shows a localized area of wear

9  down to 1/32 of tread depth which is evidence of the localized

10  impact damage that caused the subject failure.   Further, due to

11  the impact injury the tire would have exhibited a bulge prior to

12  the accident that would have been visible to anyone looking at

13  the tire.   Pursuant to the testimony of Mrs. Contreras, on the

14  day before the accident Mr. Contreras himself put air in the

15  vehicle's tires and on the day of the accident, when on the way

16  home to the Fresno area, Mr. Contreras stopped at a gas station

17  on the Grapevine area and while he did not put gas in the vehicle

18  or air in the tires, he inspected the tires at that time.

19  　　　　12.   A secondary cause of the failure was that the tire was

20  being run in an overdeflected condition.   The subject tire was a

21  different size tire than the original equipment tire described on

22  the vehicle's placard.   Due to the size of the subject tire, in

23  order to have a higher load carrying capacity, it should have

24  been inflated to 35 psi, but the evidence from the 3 other tires

25  (that did not fail) on the subject vehicle is that Mr. Contreras

26  was using the 26 psi recommended on the placard for tires of a

27  different size then the subject tire.   This was a contributing

28  factor to the overdeflected/underinflated use in the subject

1   tire.

2        13.   The design of the subject P225/70R15 Road King Sport

3   S/R tire differs significantly from the design of the highly

4   publicized Firestone tires which were recalled in 2001.

5   Plaintiffs cannot plausibly argue that the subject tire should

6   have been recalled because it shares a common design flaw with

7   the recalled tires.   Plaintiffs attempt to make a comparison

8   based upon adjustment rates.   However, the recalled tires were

9   not recalled because of their adjustment rate.   Moreover, the

10  evidence is that the adjustment rate of the subject tire and

11  those common green to it were "historically low."

12                       VI.   RELIEF SOUGHT

13  A.   <u>Maria Guadalupe Contreras</u>

14       1.   Maria Guadalupe Contreras, widow, age, 40, a restrained

15  front seat passenger, sustained injuries consisting of abrasions

16  to the left temple and upper left cheek, bruises and seatbelt

17  marks to the neck and chest including chest pain, abdominal pain,

18  right shoulder pain, back pain, left groin pain, dizziness,

19  hysteria and extreme grief/sadness.   Mrs. Contreras also suffered

20  from anxiety and depression over the loss of her husband and as a

21  result of the physical, emotional and traumatic injuries

22  sustained by her children, Yvonne and Alexander Contreras.

23       2.   Mrs. Contreras received emergency room treatment at

24  Tulare District Hospital and was released that same day.

25       3.   Medical expenses:   The following is an itemization of

26  medical costs incurred by Maria Guadalupe Contreras:

27            Tulare District Hospital      $227.10

28            Children's Hospital          $1,521.73

                            10

1          Josephine Perez, M.D.            $312.00

2          Sierra Kings District Hospital  $152.70

3          Life Star Ambulance         $66.01

4          TOTAL                $2,779.53

5       4.    Future medical expenses:  40 psychological counseling

6 sessions at a cost of $150.00 each session; 24 family counseling

7 sessions at a cost of $150.00 per session; 6 to 8 consultations

8 over the next year for psychopharmacological treatment at a cost

9 of $250.00 per session.

10       5.    Periods of Total and Partial Disability:  none.

11       6.    Earnings Prior to the Incident:  none.

12       7.    Estimated Diminution of Earning Power:  None.

13       8.    Property Damage:  $8,565.28.

14       9.    General and Punitive Damages:  See relief sought.

15 B.    <u>YVONNE CONTRERAS</u>

16       10.    Yvonne Contreras, a minor daughter, age 11, and

17 restrained back seat passenger, sustained injuries consisting of

18 headaches, lacerations to body, grief/sadness, and depression

19 over the loss of her father.

20       11.    Yvonne Contreras was treated and released from Tulare

21 District Hospital that same day.

22       12.    Medical expenses: the following is an itemization of

23 medical costs incurred by Yvonne Contreras:

24          Life Star Ambulance      $641.50

25          Tulare District Hospital <u>$150.00</u>

26          TOTAL            $791.50

27       13.    Future medical expenses: none.

28       14.    Periods of total and partial disability: none.

1    15.   Earnings prior to the incident:  not applicable as
2 Plaintiff is a minor.

3    16.   Estimated diminution of earning power: not applicable
4 as Plaintiff is a minor.

5    17.   Property damage:  $8,565.28.

6    18.   General and punitive damages:  see relief sought.

7 C.   ALEXANDER CONTRERAS

8    19.   Alexander Contreras, a minor son, age 7, and restrained
9 back seat passenger, sustained injuries consisting of mild closed
10 head injury, more specifically small left frontal extraaxial
11 acute hemorrhage, left clavicular fracture, lacerations to his
12 left hand, facial abrasions including his left ear and scalp and
13 fever.  In addition, Alexander Contreras, had a five (5) second
14 starring episode.

15    20.   Alexander Contreras received emergency room treatment
16 from Tulare District Hospital, but because of his small left
17 frontal extraaxial acute hemorrhage was transferred to Children's
18 Hospital and remained overnight for observation and further x-
19 rays which revealed he had a fractured clavicle and was placed on
20 a special brace for his shoulders.  He was released on July 1,
21 2003.

22    21.   The following is an itemization of medical costs
23 incurred by Alexander Contreras:

24        Life Star Ambulance        $1,883.50
25        Tulare District Hospital   $1,218.50
26        Children's Hospital        $5,580.11
27        Josephine Perez, M.D.        $148.40
28        TOTAL                      $8,830.51

12

22.   Future medical expenses: none.

23.   Periods of total and partial disability: none.

24.   Earnings prior to the incident: not applicable as Plaintiff is a minor.

25.   Estimated diminution of earning power: not applicable as Plaintiff is a minor.

26.   Property damage: $8,565.28.

27.   General and punitive damages: see relief sought.

28.   Plaintiffs seek relief in the following categories for damages:

29.   Compensatory damages for the wrongful death of Artemio Aguilar Contreras and for the personal injuries sustained by Plaintiffs as follows:

    (a)   Non-economic damages for personal injuries in an amount to be determined by a jury.

    (b)   Damages for the loss of love, society, comfort, support, protection, services, and inheritance rights on behalf of Plaintiffs in an amount to be determined by a jury.

    (c)   Funeral and burial expenses for Artemio Contreras.

    (d)   Past and future economic losses for the wrongful death of Artemio Contreras and for personal injuries.  The following are the amounts claimed in economic losses:

        i.   Past Medical Expenses:

          •   Artemio Contreras        $3,316.80

          •   Maria Contreras          $2,779.53

          •   Yvonne Contreras           $791.50

13

| | | |
|---|---|---|
| • | Alexander Contreras | $8,830.51 |
| • | TOTAL | $15,781.34 |
| ii. | Future Medical Expenses | $9,600.00 |
| iii. | Funeral & Burial Expenses | $8,169.37 |
| iv. | Property Damage | $8,565.28 |
| v. | Past Loss of Support | $353,605.00 |
| vi. | Future Loss of Support | $2,255,747.00 |

TOTAL ECONOMIC DAMAGES                      $2,651,404.99

30.   Punitive damages against Firestone to be determined by a jury.

**WRONGFUL DEATH PLAINTIFFS**

31.   Annual contribution of decedent to dependents prior to death:

| | | |
|---|---|---|
| 1996 | U.S. Department of Agriculture | $24,781.76 |
| 1997 | U.S. Department of Agriculture | $60,243.73 |
| 1998 | U.S. Department of Agriculture | $63,757.91 |
| 1999 | U.S. Department of Agriculture | $70,478.38 |
| 2000 | U.S. Department of Agriculture | $67,533.10 |
| 2001 | U.S. Department of Agriculture | $50,951.76 |
| 2002 | U.S. Department of Agriculture<br>Department of Veterans Affairs | $29,523.22<br>$34,866.23 |
| 2003 | Department of Veterans Affairs<br>(Partial year, date of death 06/30/03) | $39,679.83 |

32.   Decedent's physical condition, education and training prior to death:   Artemio Conreras, decedent, was physically fit and healthy prior to his death.   Mr. Contreras owned and had exercise equipment in his home, lifted weights three times a week and jogged every day.

33.   Mr. Contreras earned and received his Bachelor's Degree

14

1  in Business Administration - International Business from Fresno

2  State University, California in 1995.

3       34.   After completing his education at Fresno State, Mr.

4  Contreras began working for U.S. Customs in Los Angeles,

5  California and remained employed for 5 years.  He then left to

6  work for the U.S. Treasury, and finally the Veterans Hospital in

7  Fresno, where he remained employed until the time of the

8  accident.

9                    VII.   DISPUTED ISSUES OF LAW

10  A.   Plaintiffs

11       1.   There are several disputed issues of law which are

12  fully set forth in the special briefing and motions in limine.

13  Plaintiffs contend that, in California, a manufacturer has a duty

14  to warn of or remedy any defects in its products that may arise

15  after the sale of a product.  A manufacturer that fails to comply

16  with the applicable standard of care is negligent.  *Hernandez v.*

17  *Badger Construction Equipment Co.*, 34 Cal.Rptr.2d 732 (Cal. Ct.

18  App. 1994); *Lunghi v. Clark Equipment Co.*, 200 Cal.Rptr. 387

19  (Cal. Ct. App. 1984); C.A.C.I. 1223 (2007).  Plaintiffs also

20  contend that the consumer expectations test is appropriate for

21  this case.  Plaintiffs hereby incorporate by reference their

22  argument in response to Ford's Motion in Limine to Exclude the

23  Use of the Consumer Expectations Test of Design Defect and Limit

24  Plaintiffs to the Risk-Benefit Test of Design Defect.

25  B.   Defendants

26       1.   Ford contends that the consumers expectations test of

27  design defect is inappropriate for this case, and that Plaintiffs

28  should be limited to the risk-benefit test of design defect set

                                  15

1  forth in *Baker v. Lull Engineering Co., Inc.*, 20 Cal.3d 413

2  (1978).  Ford hereby incorporates by reference its argument in

3  support of the risk-benefit test of design defect set forth in

4  Ford's Motion in Limine to Exclude the Use of the Consumer

5  Expectations Test of Design Defect and Limit Plaintiffs to the

6  Risk-Benefit Test of Design Defect (Document No. 188 on the

7  Court's docket).

8      2.   Firestone joins in Ford's arguments that the consumers'

9  expectations test of design defect is inappropriate for this

10 case.

11                   **VIII.  ABANDONED ISSUES**

12     1.   Plaintiffs have abandoned all defect allegations

13 against Ford other than their claim that the Explorer has

14 defective handling characteristics following a tire tread

15 separation.  Plaintiffs have also dismissed their claim for

16 punitive damages against Ford Motor Company, with prejudice.

17 Plaintiffs have determined they will not pursue a claim under the

18 consumer expectation theory of product liability.  Plaintiffs

19 will not submit evidence or claim that any alleged manufacturing

20 defect was the legal cause of tire failure in this case or

21 resulting injury to any Plaintiff.

22                      **IX.   WITNESSES**

23 A.   <u>Plaintiffs</u>

24      Potential lay witnesses and treating provider testimony:

25     1.   Maria Guadalupe Contreras
            910 11th Street
26          Orange Cove, CA 93646
            (559) 626-1183
27

28 ///

                           16

2.   Alexander Contreras
     910 11th Street
     Orange Cove, CA 93646
     (559) 626-1183

3.   Yvonne Contreras
     910 11th Street
     Orange Cove, CA 93646
     (559) 626-1183

4.   Bruce Chastain - Expert
     2535 Redwood
     Visalia, CA 93291
     (559) 627-1799

5.   Officer Drewry, #15798
     California Highway Patrol
     1382 West Olive Avenue
     Fresno, CA 93728
     (559) 441-5441

6.   Officer Frakes, #8339
     California Highway Patrol
     1382 West Olive Avenue
     Fresno, CA 93728
     (559) 441-5441

7.   M. Collins, EMT II
     Life Star Ambulance
     P. O. Box 1101
     Tulare, CA 93275
     (550) 688-2550

8.   S. Beavers
     Life Star Ambulance
     P. O. Box 1101
     Tulare, CA 93275
     (559) 688-2550

9.   R. Seals, EMT
     Life Star Ambulance
     P. O. Box 1101
     Tulare, CA 93275
     (559) 688-2550

10.  Sue Stone, M.D.
     Tulare District Hospital
     869 Cherry Street
     Tulare, CA 93274
     (559) 688-0821

///

///

17

11. Robert Croutch, M.D.
    Tulare District Hospital
    869 Cherry Street
    Tulare, CA 93274
    (559) 688-0821

12. Robert Barnes
    c/o Bridgestone Firestone
    (former employee - video deposition)

13. Timothy Davis
    c/o Ford Motor Company
    (video deposition)

14. Kenneth Krammer
    c/o Ford Motor Company
    (video deposition)

15. Edivia Caballero
    c/o Ford Motor Company
    (video deposition)

16. Carlos Maron
    c/o Ford Motor Company
    (video deposition)

17. Jacques Nasser
    c/o Ford Motor Company
    (video deposition)

18. William Clay Ford, Jr.
    c/o Ford Motor Company
    (video deposition)

19. John Behr
    c/o Bridgestone Firestone
    (video deposition)

20. Sanjay Govindjee
    c/o Bridgestone Firestone
    (video deposition)

21. Doug Lyon
    c/o Bridgestone Firestone
    (video deposition)

22. Charles G. Seilnacht
    c/o Ford Motor Company
    (video deposition)

23. Martin Yurjevich
    c/o Bridgestone Firestone
    (video deposition)

///

18

24. Virginia Kocaj
    c/o Bridgestone Firestone
    (video deposition)

25. Bill Vandewater
    c/o Bridgestone Firestone
    (video deposition)

26. Gary B. Crigger
    c/o Bridgestone Firestone
    (video deposition)

27. Deepak Parekh
    c/o Ford Motor Company
    (video deposition)

28. T. Boaz, M.D.
    Tulare District Hospital
    869 Cherry Street
    Tulare, CA 93274
    (559) 688-0821

29. Bruce A. Trevino, M.D.
    Children's Hospital
    9300 Valley Children's Place
    Madera, CA 93638
    (559) 353-3000

30. William Hstrup, Jr., M.D.
    Children's Hospital
    9300 Valley Children's Place
    Madera, CA 93638
    (559) 353-3000

31. James Hopkins, D.O.
    Children's Hospital
    9300 Valley Children's Place
    Madera, CA 93638
    (559) 353-3000

32. David Knierim, M.D.
    Children's Hospital
    9300 Valley Children's Place
    Madera, CA 93638
    (559) 353-3000

33. David S. Hodge, M.D.
    Children's Hospital
    9300 Valley Children's Place
    Madera, CA 93638
    (559) 353-3000

///

///

34. **Arien Vincent, M.D.**
    Children's Hospital
    9300 Valley Children's Place
    Madera, CA 93638
    (559) 353-3000

35. **Scott M. Driscoll, M.D.**
    Sierra Kings District Hospital
    372 West Cypress Ave.
    Reedley, CA 93654
    (559) 638-8155

36. **Josephine Perez, M.D.**
    Tri-County Family Medical Clinic
    2400 Sierra Street
    Kingsburg, CA 93631
    (559) 897-2963

37. **Paul J. Frederick**
    Deputy Coroner, Tulare County
    2404 West Burrel
    Visalia, CA 93291
    (559) 733-6241

**Deposition Designation Testimony**

38. **Yoichiro Kaiziki**
    c/o Bridgestone Corp.
    (video deposition)

39. **John T. Lampe**
    c/o Bridgestone Firestone
    (video deposition)

40. **Dan Sauer**
    c/o Bridgestone Firestone
    (video deposition)

41. **Dennis Candido**
    c/o Bridgestone Firestone
    (video deposition)

42. **Brian Queiser**
    c/o Bridgestone Firestone
    (video deposition)

**Expert Witness Testimony In Person**

43. **David A. Renfroe, Ph.D., P.E.**
    The Engineering Institute, LLC
    P. O. Box 610
    Farmington, AR 72730-0610
    (479) 846-8000

///

20

44. Dennis Carlson
    Carlson Engineering, Inc.
    1548 South Euclid Avenue, Suite A
    Tucson, AZ 85713
    (520) 623-1620

45. Rene A. Castaneda, P.E.
    Castaneda & Associates
    P. O. Box 3650
    Clovis, CA 93613
    (559) 325-7885

46. Stephanie Rizzardi-Pearson
    Rizzardi-Pearson Associates
    140 South Lake, Suite 217
    Pasadena, CA 91101
    (626) 229-0304

47. Marcel O. Ponton, Ph.D.
    595 East Colorado Boulevard, Suite 800
    Pasadena, CA 91101
    (626) 449-2484

B.   Ford's List of Witnesses

1.   Tony Beltran
     California Highway Patrol
     1382 West Olive Avenue
     Fresno, CA 92728

2.   Bruce Chastain - Expert
     2535 Redwood
     Visalia, CA 93291

3.   Eddie Cooper
     B33 Consulting Inc.
     8277 East Remuda Drive
     Scottsdale, AZ 85255

4.   Troy Dehne
     46028 Green Ridge
     Northville, Michigan 48167

5.   Matthew Drewry
     California Highway Patrol
     1382 West Olive Avenue
     Fresno, CA 92728

6.   Paul Frederick
     Tulare County Coroner's Office
     1225 South O Street
     Tulare, CA 92374

///

7.   Roy Frakes
     California Highway Patrol
     1382 West Olive Avenue
     Fresno, CA 92728

8.   Geoff Germane - Expert
     Germane Engineering
     5314 North 250 West, Suite 310
     Provo, Utah 84604

9.   Kenneth Kramer
     37615 St. Martin
     Livonia, Michigan 48152

10.  Robert Piziali – Expert
     Piziali & Associates
     655 Sky Way, Suite 202
     San Carlos, CA 94070

11.  Don Tandy - Expert
     Tandy Engineering & Associates
     32100 Dobbin-Huffsmith Road
     Magnolia, TX 77354

12.  Gary Walker
     Tulare County Coroner's Office
     1225 South O Street
     Tulare, CA 92374

13.  David J. Weiner - Expert
     Vavoulis & Weiner
     445 South Figueroa Street, Suite 3700
     Los Angeles, CA 90071

Bridgestone/Firestone's List

1.   Stan Andrews - Expert

2.   Robert Barnes

3.   John Behr

4.   Thomas Black - Expert

5.   Edivia Caballero

6.   Dennis Candido

7.   Dennis Carlson - Expert

8.   Rene Casteneda - Expert

9.   Dr. Rene S. Charles

10.  Bruce Lee Chastain

22

11.  Maria Guadalupe Contreras

12.  Yvonne Contreras

13.  Eddie Cooper - Expert

14.  Gary B. Crigger

15.  Custodian of Records/PMQ/PMK
     Adventist Health
     Selma Community Health

16.  Custodian of Records/PMQ/PMK
     Blue Shield of San Francisco
     Attn: Mary Ann Laguara

17.  Custodian of Records/PMQ/PMK
     Children's Hospital
     Madera, CA

18.  Custodian of Records/PMQ/PMK
     CHP Visalia

19.  Custodian of Records/PMQ/PMK
     Dopkins Funeral Chapel

20.  Custodian of Records/PMQ/PMK
     Emergency Medical Service Prehospital Care Report

21.  Custodian of Records/PMQ/PMK
     Life Star Ambulance

22.  Custodian of Records/PMQ/PMK
     Pathology Associates

23.  Custodian of Records/PMQ/PMK
     Neorubehavior Group

24.  Custodian of Records/PMQ/PMK
     Sierra Kings District Hospital
     Reedley, CA

25.  Custodian of Records/PMQ/PMK
     State Farm
     Bakersfield, CA

26.  Custodian of Records/PMQ/PMK
     T & M Towing

27.  Custodian of Records/PMQ/PMK
     Tri-County Family Medical Center
     Kingsburg, CA

28.  Custodian of Records/PMQ/PMK
     Tulare District Hospital

29.  Timothy Davis

30.  Troy Dehne

31.  Matthew Drewry

32.  Richard Fay - Expert

33.  William Clay Ford, Jr.

34.  Roy Frakes

35.  Officer J. Garcia

36.  James Gardner - Expert

37.  Geoffrey James Germane, Ph.D. - Expert

38.  Sanjay Govindjee

39.  Joseph L. Grant - Expert

40.  Ronald Johnson

41.  Yoichiro Kaizaki

42.  Dr. David Knierim

43.  Virginia Kocaj

44.  Kenneth D. Kramer

45.  John T. Lampe

46.  Andrew E. Levitt

47.  Carlos Maron

48.  Dr. James Mohs

49.  Jacques Nasser

50.  Stephanie Rizzardi-Pearson - Expert

51.  Josephine Perez

52.  Robert Piziali - Expert

53.  Marcel Ponton - Expert

54.  Brian Queiser

55.  David A. Renfroe - Expert

56.  Dan Sauer

1    57.  Charles G. Seilnacht

2    58.  Sue Stone

3    59.  Donald Tandy - Expert

4    60.  Bruce Trevino

5    61.  Bill Vandewater

6    62.  Dr. Vargus
         Kingsburg Clinic
7        Kingsburg, CA

8    63.  Dr. Gary Walter

9    64.  David Weiner - Expert

10   65.  Martin Yurjevich

11   Counsel are each ordered to submit a list of witnesses to

12   the court along with a copy for use by the Courtroom Deputy

13   Clerk, on the same date and at the same time as the list of

14   exhibits are to be submitted as ordered below.

15   **CAUTION**

16   Counsel are cautioned that expert witnesses, including

17   percipient experts, must be designated as such.  No witness, not

18   identified as a witness in this order, including "rebuttal"

19   witnesses, will be sworn or permitted to testify at trial.

20   X.  EXHIBITS, SCHEDULES AND SUMMARIES

21   The following is a list of documents or other exhibits that

22   the parties expect to offer at trial.

23   **CAUTION**

24   Only exhibits so listed will be permitted to be offered into

25   evidence at trial, except as may be otherwise provided in this

26   order.  No exhibit not designated in this pretrial order shall be

27   marked for identification or admitted into evidence at trial.

28   A.   **Plaintiff's Exhibits**

25

1      1.    Those will be provided to us by counsel.

2  B.    **Defendant's Exhibits**

3      1.    Those will be provided to us by counsel.

4                     **XI.    DISCOVERY DOCUMENTS**

5      Only specifically designated discovery requests and

6  responses will be admitted into evidence.  Any deposition

7  testimony shall be designated by page and line and such

8  designations filed with the Court on or before March 10, 2008.

9  The opposing party shall counter-designate by line and page from

10  the same deposition and shall file written objections to any

11  question and answer designated by the opposing party and filed

12  with the court on or before March 17, 2008.

13      Written discovery shall be identified by number of the

14  request.  The proponent shall lodge the original discovery

15  request and verified response with the courtroom deputy one day

16  prior to trial.  The discovery request and response may either be

17  read into evidence, or typed separately, marked as an exhibit, as

18  part of the exhibit marking process, and offered into evidence.

19      All discovery documents shall be marked as exhibits in

20  accordance with the local practice of the Court.

21      1.    The parties have agreed to exchange exhibit lists on

22  February 27, 2008.  Pursuant to the agreement of the parties and

23  the Court's Order at the telephone conference on February 5,

24  2008, the parties will file their final exhibit lists and

25  exhibits on Tuesday, March 11, 2008, one week before trial.

26                       **XII.    STIPULATIONS**

27      1.    Stipulations previously filed with the Court and

28  accepted by the Court will be incorporated into orders on motions

1  in limine and will be memorialized as an exhibit to this Pretrial

2  Order.

3                    XIII.   AMENDMENTS - DISMISSALS

4      1.   Plaintiffs have dismissed their claim for punitive

5  damages against Ford Motor Company, with prejudice.

6                    XIV.   FURTHER TRIAL PREPARATION

7  A.   Trial Briefs.

8      Counsel are directed to file a trial brief in this matter on

9  or before March 12, 2008.  No extended preliminary statement of

10 facts is required.  The brief should address disputed issues of

11 substantive law, disputed evidentiary issues of law that will not

12 be resolved in limine, and any other areas of dispute that will

13 require resolution by reference to legal authority.

14 B.   Duty of Counsel To Pre-Mark Exhibits.

15     1.   Counsel for the parties are meeting and conducting

16 a joint exhibit conference for purposes of pre-marking and

17 examining each other's exhibits and preparing an exhibit list.

18 All joint exhibits will be pre-marked JX1-JX200; all of the

19 plaintiff's exhibits will be pre-marked with numbers 201-400; all

20 of defendant's exhibits will be pre-marked with numbers 401-600.

21     2.   Each and every page of each and every exhibit shall be

22 individually Bates-stamped for identification purposes, and

23 paginated with decimals and arabic numerals in seriatim; i.e.,

24 1.1, 1.2, 1.3 . . ..

25     3.   Following such conference, each counsel shall have

26 possession of four (4) complete, legible sets of exhibits, for

27 use as follows:

28         a.   Two (2) sets to be delivered to the Courtroom

                              27

1 Deputy Clerk, Alice Timken, no later than 4:00 p.m. on March 14,

2 2008, an original for the court and one for the witness.

3          b.   One (1) set to be delivered to counsel for the

4 opposing party and one (1) set to be available for counsel's own

5 use.

6     4.   Counsel are to confer to make the following

7 determination as to each of the exhibits proposed to be

8 introduced into evidence and prepare separate indexes, one

9 listing joint exhibits, one listing each party's exhibits:

10          a.   Joint exhibits, i.e., any document which both

11 sides desire to introduce into evidence, will be marked as a

12 joint exhibit (JX), and numbered JX1-___.   Joint exhibits shall

13 be listed as such in the exhibit list in a column that notes they

14 are admitted into evidence without further foundation;

15          b.   As to any exhibit, not a joint exhibit, to which

16 there is no objection to its introduction into evidence, the

17 exhibit will be marked as Plaintiff's Exhibit ___, or Defendant's

18 Exhibit ___ in evidence, and will be listed in the exhibit list

19 as the exhibit of the offering party;

20          c.   The exhibit list shall include columns for noting

21 objections to exhibits.   The first column will list any

22 objections as to foundation; i.e., Plaintiff's Foundation 2 –

23 "not authenticated."

24          d.   The exhibit list shall include a second column for

25 noting substantive objections to exhibits based on any other

26 grounds; i.e., "hearsay, improper opinion, irrelevant."

27          e.   The exhibit list shall include a description of

28 each exhibit on the left-hand side of the page, and the three

1  columns outlined above (as shown in the example below).

2                    **List of Exhibits**

3                          Admitted        Objection         Other

4  **Exhibit #     Description   In Evidence     To Foundation    Objection**

5

6          f.    The completed exhibit list shall be delivered to

7  the Courtroom Deputy Clerk on or before March 14, 2008, at 4:00

8  p.m., P.S.T.

9          g.    If originals of exhibits cannot be located, copies

10  may be used, however, the copies must be legible and accurate.

11  If any document is offered into evidence that is partially not

12  legible, the Court sua sponte will exclude it from evidence.

13  C.    **Discovery Documents**.

14      1.    Counsel shall file a list of discovery documents with

15  the Courtroom Deputy Clerk at the same time and date as the

16  witness and exhibit lists are lodged with the Courtroom Deputy

17  Clerk, unless the discovery documents are marked as exhibits,

18  which counsel intend to use at trial by designating by number,

19  the specific interrogatory, request for admission, or other

20  discovery document.   Counsel shall comply with the directions of

21  subsection XII (above) for introduction of the discovery document

22  into evidence.

23  D.    **Motions In Limine**.

24      1.    A substantial number of motions in limine have been

25  ruled on.   Hearings are in progress concerning the resolution of

26  remaining motions in limine, which will be concluded and decided

27  before commencement of the trial on March 18, 2008.

28  ///

                        29

1  **E.     Trial Documents**.

2        1.    **Exhibits To Be Used With Witness**.  During the trial of
3  the case, it will be the obligation of counsel to provide
4  opposing counsel not less than forty-eight hours before the
5  witness is called to the witness stand, the name of the witness
6  who will be called to testify and to identify to the Court and
7  opposing counsel any exhibit which is to be introduced into
8  evidence through such witness that has not previously been
9  admitted by stipulation or court order or otherwise ruled upon,
10 and to identify all exhibits and other material that will be
11 referred to in questioning of each witness.  If evidentiary
12 problems are anticipated, the parties must notify the court at
13 least twenty-four hours before the evidence will be presented.
14 Evidentiary issues will not be addressed in the presence of the
15 jury, although counsel are permitted to request to approach side-
16 bar to discuss complex or issues that cannot be addressed by a
17 stated ground of objection.  All hearings on the resolution of
18 evidentiary issues shall be out of the presence of the jury and
19 not during trial hours, which shall be from 8:30 a.m. to 12:00
20 p.m., 1:30 p.m. to 4:30 p.m., with the availability of going
21 until 5:00 p.m. if circumstances accommodate.

22 **F.   Counsel's Duty To Aid Court In Jury Voir Dire**.

23       1.    Counsel shall submit proposed voir dire questions, if
24 any, to the Courtroom Deputy Clerk at atimken@caed.uscourts.gov
25 on or before March 14, 2008, at 4:00 p.m.  Counsel shall also
26 prepare a joint "statement of the case" which shall be a neutral
27 statement, describing the claims and defenses for prospective
28 jurors, to be used in voir dire.  The parties shall also lodge

1   with the Court, proposed questions, if any, to be propounded by
2   the Court during jury voir dire.  The parties shall have
3   approximately 20 minutes per side for attorney questioning of
4   prospective jurors on subjects not covered by the Court.

5        2.   In order to aid the court in the proper voir dire
6   examination of the prospective jurors, counsel are directed to
7   lodge with the Court the day before trial a list of the
8   prospective witnesses they expect to call if different from the
9   list of witnesses contained in the Pre-Trial Order of the Court.
10  Such list shall not only contain the names of the witnesses, but
11  their business or home address to the extent known.  This does
12  not excuse any failure to list all witnesses in the Pre-Trial
13  Order.

14       3.   Counsel shall jointly submit, to the Courtroom Deputy
15  Clerk, the day before trial, a neutral statement of the claims
16  and defenses of the parties for use by the court in voir dire.
17  G.   Counsel's Duty To Prepare And Submit Jury Instructions.

18       1.   All proposed jury instructions shall be filed and
19  served on or before March 17, 2008, by 4:00 p.m.  Jury
20  instructions shall be submitted in the following format.

21       2.   Proposed jury instructions, including verdict forms,
22  shall be submitted via e-mail to dpell@caed.uscourts.gov
23  formatted in WordPerfect for Windows 10.  Counsel shall be
24  informed on all legal issues involved in the case.

25       3.   The parties are required to jointly submit one set of
26  agreed upon jury instructions.  To accomplish this, the parties
27  shall serve their proposed instructions upon the other fourteen
28  days prior to trial.  The parties shall then meet, confer, and

1  submit to the Court the Friday before the trial is to commence,

2  one complete set of agreed-upon jury instructions.

3      4.    If the parties cannot agree upon any instruction, they

4  shall submit a supplemental set of instructions designated as not

5  agreed upon by March 17, 2008, at 4:00 p.m.

6      5.    Each party shall file with the jury instructions any

7  objection to non-agreed upon instructions proposed by any other

8  party.  All objections shall be in writing and shall set forth

9  the proposed instruction objected to in its entirety.  The

10  objection should specifically set forth the objectionable matter

11  in the proposed instruction and shall include a citation to legal

12  authority explaining the grounds for the objection and why the

13  instruction is improper.  A concise statement of argument

14  concerning the instruction may be included.  Where applicable,

15  the objecting party shall submit an alternative proposed

16  instruction covering the subject or issue of law.

17      6.    **Format**.  The parties shall submit one copy of each

18  instruction.  The copy shall indicate the party submitting the

19  instruction, the number of the proposed instruction in sequence,

20  a brief title for the instruction describing the subject matter,

21  the test of the instruction, the legal authority supporting the

22  instruction, and a legend in the lower lefthand corner of the

23  instruction: "Given," "Given As Modified," "Withdrawn" and

24  "Refused" showing the Court's action with regard to each

25  instruction and an initial line for the judge's initial in the

26  lower right-hand corner of the instruction.  Ninth Circuit Model

27  Jury Instructions should be used where the subject of the

28  instruction is covered by a model instruction.

1    7.   All instruction should be short, concise,
2  understandable, and neutral statements of the law.  Argumentative
3  or formula instructions will not be given, and should not be
4  submitted.

5    8.   Parties shall, by italics or underlining, designate any
6  modifications of instructions from statutory authority, or any
7  pattern instruction such as the Model Circuit Jury Instructions
8  or any other source of pattern instructions, and must
9  specifically state the modification made to the original form
10  instruction and the legal authority supporting the modification.

11    9.   Proposed verdict forms shall be jointly submitted or if
12  the verdict forms are unagreed upon, each party shall submit a
13  proposed verdict form.  Verdict forms shall be submitted to the
14  Courtroom Deputy Clerk on the first day of the trial.

15    10.   Failure to comply with these rules concerning the
16  preparation and submission of instructions and verdict forms may
17  subject the non-complying party and/or its attorneys to
18  sanctions.

19              XV.   USE OF LAPTOP COMPUTERS/POWERPOINT FOR
20                    PRESENTATION OF EVIDENCE

21    1.   If counsel intends to use a laptop computer for
22  presentation of evidence, they shall contact Alice Timken,
23  Courtroom Deputy Clerk, at least one week prior to trial.  The
24  Courtroom Deputy Clerk will arrange a time for any attorney to
25  bring any laptop to be presented to someone from the Court's
26  Information Technology Department, who will provide brief
27  training on how the parties' electronic equipment interacts with
28  the court's audio/visual equipment.  If counsel intend to use

                                33

1  PowerPoint, the resolution should be set no higher than 1024 x

2  768 when preparing the presentation.

3      2.   ALL ISSUES CONCERNING AUDIO-VISUAL MATERIALS AND

4  COMPUTER INTERFACE WITH THE COURT'S INFORMATION TECHNOLOGY SHALL

5  BE REFERRED TO THE COURTROOM DEPUTY CLERK.

6              XVI.   FURTHER DISCOVERY OR MOTIONS

7      1.   None anticipated at this time, with the exception of

8  agreed telephonic depositions of Firestone's experts and a

9  videotaped deposition of Plaintiff's expert, Dennis Carlson, for

10  use at the 2/29 hearing.

11                   XVII.   SETTLEMENT

12      1.   It does not appear that further settlement efforts

13  would be productive.

14              XVIII.   SEPARATE TRIAL OF ISSUES

15      1.   No need for separate trial of any issues.  In the event

16  of any finding of entitlement to punitive damages, the amount of

17  punitive damages, if any, shall be tried in a second phase in a

18  continuous trial before the same jury.

19      XIX.   IMPARTIAL EXPERTS, LIMITATIONS OF EXPERTS

20      1.   Unnecessary.

21                  XX.   ATTORNEYS' FEES

22      1.   Not sought.

23              XXI.   ESTIMATE OF TRIAL TIME

24      1.   Twenty court days.

25                  XXII.   TRIAL DATE

26      1.   March 18, 2008, 8:30 a.m., Courtroom 3, Seventh Floor.

27    XXIII.   NUMBER OF JURORS AND PEREMPTORY CHALLENGES

28      1.   There will be a nine person jury.  The Plaintiffs shall

                              34

have ten peremptory challenges.  Each Defendant shall have six

peremptory challenges.

XXIV.  AMENDMENT OF FINAL PRETRIAL ORDER

1.   The Final Pretrial Order shall be reviewed by the

parties and any corrections, additions, and deletions shall be

drawn to the attention of the Court immediately.  Otherwise, the

Final Pretrial Order may only be amended or modified to prevent

manifest injustice pursuant to the provisions of Fed. R. Civ. P.

16(e).

XXV.  MISCELLANEOUS

1.   None.

IT IS SO ORDERED.

**Dated:   March 7, 2008**                     **/s/ Oliver W. Wanger**
                                        UNITED STATES DISTRICT JUDGE